## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CAMERON PADGETT,**

      Plaintiff,

    v.

**BOARD OF TRUSTEES OF**
**MICHIGAN STATE UNIVERSITY,**
In their official capacities,

      and

**LOU ANNA KIMSEY SIMON,**
In her personal and official capacities,

      Defendants.

Case No. 1:17-cv-00805-JTN-ESC

Hon. Janet T. Neff

Mag. Ellen S. Carmody

---

**BRISTOW LAW, PLLC**
By:  Kyle Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(P):  (248) 838-9934
(E):  BristowLaw@gmail.com
*Attorney for Cameron Padgett*

**VARNUM LLP**
Bryan R. Walters (P58050)
333 Bridge St. NW
P.O. Box 352
Grand Rapids, MI 49501
(P):  (616) 336-6000
(E):  brwalters@varnumlaw.com
*Attorney for Board of Trustees of Michigan State*
*University and Lou Anna Kimsey Simon*

---

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
## (ORAL ARGUMENT REQUESTED)

---

NOW COMES Cameron Padgett ("Plaintiff"), by and through Attorney Kyle Bristow, and hereby moves this Honorable Court for a preliminary injunction—for the reasons set forth in Plaintiff's Brief in Support of Plaintiff's Motion for a Preliminary Injunction—wherein Board of Trustees of Michigan State University ("MSU Trustees") and Lou Anna Kimsey Simon ("Simon") (collectively "Defendants") are ordered to permit Plaintiff to rent a conference room or lecture hall

on the campus of Michigan State University to host Richard Spencer of the National Policy Institute as a speaker to discuss Alt-Right philosophy without Plaintiff being required to pay for police protection, posting bond, or providing insurance for the event, and which also requires Defendants to maintain law and order via the use of the Michigan State University Police Department so as to permit the attendees of the event to peacefully assemble and speak.

Respectfully submitted,

**BRISTOW LAW, PLLC**

/s/ Kyle Bristow_____
Kyle Bristow, Esq. (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(P):  (248) 838-9934
(E):  BristowLaw@gmail.com
*Attorney for Cameron Padgett*

Dated:  September 10, 2017

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CAMERON PADGETT,**

      Plaintiff,

  v.

**BOARD OF TRUSTEES OF**
**MICHIGAN STATE UNIVERSITY,**
In their official capacities,

      and

**LOU ANNA KIMSEY SIMON,**
In her personal and official capacities,

      Defendants.

Case No. 1:17-cv-00805-JTN-ESC

Hon. Janet T. Neff

Mag. Ellen S. Carmody

---

**BRISTOW LAW, PLLC**
By:  Kyle Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(P):  (248) 838-9934
(E):  BristowLaw@gmail.com
*Attorney for Cameron Padgett*

**VARNUM LLP**
Bryan R. Walters (P58050)
333 Bridge St. NW
P.O. Box 352
Grand Rapids, MI 49501
(P):  (616) 336-6000
(E):  brwalters@varnumlaw.com
*Attorney for Board of Trustees of Michigan State*
*University and Lou Anna Kimsey Simon*

---

## PLAINTIFF'S BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I. INDEX OF AUTHORITIES ................................................................................................. 2

II. STATEMENT OF ISSUE PRESENTED ........................................................................... 4

III. STANDARD OF REVIEW ............................................................................................... 5

IV. STATEMENT OF FACTS ................................................................................................ 6

   A. PROCEDURAL HISTORY ........................................................................................6

   B. FACTUAL HISTORY OF CONTROVERSY ..........................................................6

V. LAW & ARGUMENT ...................................................................................................... 12

   A. PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS ..............................12

   B. PLAINTIFF WOULD SUFFER IRREPARABLE INJURY IF THE COURT DOES
      NOT GRANT THE REQUESTED PRELIMINARY INJUNCTION ...............................14

   C. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION WOULD
      NOT CAUSE SUBSTANTIAL HARM TO DEFENDANTS OR THIRD-PARTIES TO
      THE INSTANT CIVIL ACTION ...........................................................................15

   D. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION IS IN THE
      PUBLIC INTEREST ...............................................................................................15

VI. EXHIBIT LIST .............................................................................................................. 18

VII. CONCLUSION .............................................................................................................. 19

VIII. CERTIFICATE OF SERVICE .................................................................................. 21

# I.  INDEX OF AUTHORITIES

**CASE LAW**

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) ....................................................14

*Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc) ........................13, 19

*Boos v Barry*, 485 U.S. 312 (1998) ........................................................................................13

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................................14

*Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006) ...........................................15

*Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107 (6th Cir. 2001) ...................5

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................................14

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ........................................13, 19

*Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975) ....................................................13

*Gregory v. City of Chicago*, 394 U.S. 111 (1969) ...................................................................13

*McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460 (6th Cir. 2006) ...............................................12

*Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828 (W.D. Mich. 1998) ............................................................................................................5

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) .......................................................................12

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566 (6th Cir. 2002) ..........5, 14

*Padgett v. Auburn University*, Case No. 3:17-cv-00231-WKW-WC (M.D. Ala. 2017) ...10, 18

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ....................................................................14

*Samuel v. Herrick Memorial Hospital*, 201 F.3d 830 (6th Cir. 2000) .......................................5

*Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393 (6th Cir. 1997) ............5

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) ............................................................................13

**STATUTORY AND CONSTITUTIONAL LAW**

42 U.S.C. § 1983.................................................................................................................12

First Amendment to the United States Constitution...................................................12-17, 19

Fourteenth Amendment to the United States Constitution.....................................12, 16-17, 19

**COURT RULES**

Fed. R. Civ. P. 56..............................................................................................................14

Fed. R. Civ. P. 65...............................................................................................................5

## II.  STATEMENT OF ISSUE PRESENTED

1.  Whether the Court should award Cameron Padgett ("Plaintiff") a preliminary injunction wherein Board of Trustees of Michigan State University ("MSU Trustees") and Lou Anna Kimsey Simon ("President Simon") (collectively "Defendants") are ordered to permit Plaintiff to rent a conference room or lecture hall on the campus of Michigan State University ("MSU") to host Richard Spencer ("Spencer") of the National Policy Institute ("NPI") as a speaker to discuss Alt-Right philosophy without Plaintiff being required to pay for police protection, posting bond, or providing insurance for the event, and which also requires Defendants to maintain law and order via the use of the MSU Police Department so as to permit the attendees of the event to peacefully assemble and speak.

     Plaintiff's Response:    Yes.

     Defendants' Response:  No.

### III.  STANDARD OF REVIEW

Injunctive relief can be awarded by the Court pursuant to Fed. R. Civ. P. 65.

Injunctive relief is "an extraordinary remedy which should be granted only if * * * the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  To obtain injunctive relief, a party must first show that he "is being threatened by some injury for which he has no adequate legal remedy."  *Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 1118 (6th Cir. 2001) (citations omitted).  If such is the case, the court must then examine four different factors:  (1) whether the movant is likely to prevail on the merits, (2) whether the movant would suffer irreparable injury if the court does not grant the injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether a preliminary injunction would be in the public interest.  See *Samuel v. Herrick Memorial Hospital*, 201 F.3d 830, 833 (6th Cir. 2000).

Rather than prerequisites which must each be satisfied, the relevant factors—none of which are dispositive—are competing considerations to be weighed and balanced.  See *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997); *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, 831 (W.D. Mich. 1998). Ultimately, the decision whether to grant injunctive relief is within the court's discretion.  See *Dana Corp.*, 251 F.3d at 1118.

## IV.  STATEMENT OF FACTS

### A.  PROCEDURAL HISTORY

On September 3, 2017, Plaintiff filed his Verified Complaint.  (Dockt. #1 – Plaintiff's Verified Complaint).

On September 6, 2017, Defendants waived service and Defendants' attorney entered his appearance as Defendants' attorney of record.  (Dockt. # 4 – Waiver of Service for MSU Trustees; Dockt. # 5 – Waiver of Service for President Simon).

On September 10, 2017, Plaintiff filed Plaintiff's Motion for a Preliminary Injunction.

### B.  FACTUAL HISTORY OF CONTROVERSY

Plaintiff is a senior at Georgia State University who subscribes to identitarian philosophy. Plaintiff has never been arrested for, charged with, or convicted of a violent crime, and Plaintiff does not advocate criminal conduct.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 9).

Identitarian philosophy is a Eurocentric political ideology which advocates the preservation of national identity and a return to traditional Western values.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 10).

Although Plaintiff does not consider himself Alt-Right, Plaintiff is a supporter of Spencer and Plaintiff is the organizer of Spencer's collegiate speaking tour.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 11).

Alt-Right—an abbreviation of alternative right—, is a Eurocentric political ideology which advocates the preservation of national identity, a return to traditional Western values, and advances European racial interests.  Race-based preferential treatment for non-Europeans (a/k/a affirmative action), non-European immigration to European countries and their former colonies, international free trade agreements, radical feminism, sexual deviancy, and the ideology of multiculturalism are

6

strongly criticized by adherents of Alt-Right philosophy. (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 12).

Spencer is arguably the foremost advocate for Alt-Right philosophy in the world and is rapidly becoming a major figure in contemporary American politics. Spencer graduated from the University of Virginia with a Bachelor of Arts degree, the University of Chicago with a Master of Arts degree, and pursued a Ph.D. in modern European intellectual history at Duke University. Spencer has never been arrested for, charged with, or convicted of a violent crime, and Spencer does not advocate criminal conduct. (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 13).

NPI is a think-tank based in City of Alexandria, Commonwealth of Virginia, for which Spencer serves as its figurehead. NPI promotes Alt-Right philosophy through its publications and private and public events. NPI does not advocate criminal conduct. (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 14).

Due to the viewpoint of Spencer and NPI, people who are politically left-of-center find Spencer's and NPI's constitutionally-protected political views to be objectionable. Radical leftists affiliated with the Antifa political movement have previously violently attacked Spencer and Spencer's supporters at venues at which Spencer and Spencer's supporters peacefully assembled with the explicit goal of shutting down Spencer's events. (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 15).

Antifa—an abbreviation of antifascist—is an unincorporated and international collective of communists and anarchists who resort to violence as a matter of practice to try to oppress people of a right-of-center political persuasion. Usually clothed in black and wearing masks to cowardly conceal their identities, Antifa activists routinely show up to politically right-of-center events with baseball bats, knives, sticks, pepper spray, and other weapons to attack their political opponents.

Antifa activists often throw water balloons filled with urine and other harmful objects at politically right-of-center people without lawful justification.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 16).

MSU Trustees is the governing body of Michigan State University, which is a public university principally located in City of East Lansing, State of Michigan.  MSU is organized under the laws of the State of Michigan pursuant to MCL 390.101, *et seq*.  MSU Trustees were sued in their official capacities only.  At all times relevant to the instant controversy, MSU Trustees acted under the color of state law.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 3).

President Simon is an adult natural person who is the president of MSU.  Upon information and belief, Simon is a domiciliary of the State of Michigan.  President Simon was sued in her personal and official capacities.  At all times relevant to the instant controversy, President Simon acted under the color of state law.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 4).

Located on the campus of MSU is the Kellogg Hotel & Conference Center ("Kellogg Hotel").  Kellogg Hotel is owned and operated by MSU, and hotel rooms, conference rooms, and banquet facilities at Kellogg Hotel are publicly advertised as being available for rent on the website of Kellogg Hotel at <http://kelloggcenter.com/>.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 8).

On August 16, 2017, President Simon released a statement on behalf of Defendants on President Simon's MSU-provided webpage about Spencer speaking on MSU's campus at <http://president.msu.edu/communications/speeches-statements/request-to-speak-on-campus.html>:

> Michigan State University has been contacted by the National Policy Institute seeking to rent space to accommodate a speaker on campus. The NPI describes itself as "dedicated to the heritage, identity and future of people of European descent."

8

We are aware of no connection with any MSU-related group or individual, but such is not required to seek publicly available space.

No decision has yet been made. We are reviewing the request closely in light of the deplorable violence in Charlottesville, Va., last weekend.

Michigan State takes seriously its obligations to accommodate a broad range of speech. As our record shows, this university does not determine who can access public spaces based on what they think or say.

Allowing access to public spaces would in no way constitute endorsement of messages that might be delivered there. NPI and similar groups' events staged at American campuses are intended to provoke reaction that might seem to justify organizers' racist and divisive messages, which we categorically reject.

The diversity they shun is a source of our strength, like America itself, and every day some 65,000 students, faculty and MSU staff—and half a million alumni—are the living proof. So we will not be intimidated, nor stoop to reciprocate hate.

As America's pioneer land-grant university, MSU from the start was dedicated to opening broad access to cutting-edge knowledge. We are proud of MSU's long engagement in civil and human rights. And we will continue to welcome and nurture the diverse, engaged citizen-scholars that this world needs—today more than ever.

We stand with our colleagues across the country for the best of humanity, and our resolve is implacable. Spartans Will.

(Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 18).

On August 17, 2017, President Simon released an additional statement on behalf of Defendants on President Simon's MSU-provided webpage about Spencer speaking on MSU's campus at <http://president.msu.edu/communications/speeches-statements/request-to-speak-on-campus.html>:

After consultation with law enforcement officials, Michigan State University has decided to deny the National Policy Institute's request to rent space on campus to accommodate a speaker. This decision was made due to significant concerns about public safety in the wake of the tragic violence in Charlottesville last weekend. While we remain firm in our commitment to freedom of expression, our first obligation is to the safety and security of our students and our community.

(Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 19).

Defendants have no reason to believe that Plaintiff, Spencer, or Spencer's supporters will in fact engage in and/or advocate offensive criminal misconduct should Spencer be permitted to speak on MSU's campus in a conference room or lecture hall rented by Plaintiff. (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 20).

The instant controversy is virtually identical to *Padgett v. Auburn University*, Case No. 3:17-cv-00231-WKW-WC, at the United States District Court for the Middle District of Alabama. In said case, the same plaintiff as the one of the instant civil action sued a public university for prohibiting Plaintiff from hosting Spencer as a speaker in a rented conference room or lecture hall to talk about Alt-Right philosophy. The defendants in that case alleged that Spencer's appearance on the campus of the public university would cause lawless action. Chief Judge W. Keith Watkins awarded Plaintiff a preliminary injunction so that Spencer could speak in a rented room—the defendants were court-ordered to not only protect Spencer and Spencer's supporters from Antifa via the university's police department, but to de-mask Antifa protesters to dissuade violence—, Spencer peacefully spoke on campus without advocating criminal misconduct, and Plaintiff and the defendants settled the controversy for twenty-nine-thousand-dollars ($29,000.00). (Dockt. # 1 – Plaintiff's Verified Complaint, ¶ 22); (Exhibit A – *Padgett v. Auburn University* Preliminary Injunction Opinion).

Other than Spencer speaking at Auburn University, Spencer has also spoken at Texas A&M University. Max Blau, Sarah Ganim, and Chris Welch. "Richard Spencer's Appearance at Texas A&M Draws Protests." CNN Politics. <http://www.cnn.com/2016/12/06/politics/richard-spencer-texas-am/>. 7 December 2016. Accessed 9 September 2017. See also "Richard Spencer at Texas A&M 12/6/16." Battalion Multimedia. <https://youtu.be/wlbLNWIFEY0>. 6

December 2016.  Accessed 9 September 2017.  (YouTube video of Spencer's speech at Texas A&M University).

## V.  LAW & ARGUMENT

When the facts of the instant case are taken into consideration with the four factors which the Court must analyze to determine whether Plaintiff is entitled to the requested preliminary injunction, it is undeniably clear that Plaintiff is entitled to the requested relief.

### A.  PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS

Plaintiff is likely to prevail on the merits against Defendants via Plaintiff's claim of Defendants having violated Plaintiff's First and Fourteenth Amendment rights, which is actionable via 42 U.S.C. § 1983.[1]

There are two elements for a 42 U.S.C. § 1983 claim:  (1) the deprivation or violation of a federally protected right, privilege, or immunity, and (2) the action of the defendant violating the federally protected right was taken under color of state law.  *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

In the instant case, it is undeniably clear that Plaintiff has a constitutional right—via the First and Fourteenth Amendments—to host Spencer as a speaker at MSU, and Defendants violated this right by prohibiting Plaintiff from exercising it.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶¶ 3-4, 8-24).

Spencer does not advocate violence, but the people who oppose Spencer engage in violent acts to try to prevent him from speaking.  (Dockt. # 1 – Plaintiff's Verified Complaint, ¶¶ 15-16). Instead of using the MSU Police Department to protect Spencer and Spencer's supporters from these violent miscreants, Defendants instead elected to prohibit Spencer from speaking in a lecture

---

[1] Upon information and belief, President Simon conspired with other individuals—who are currently unknown—to violate Plaintiff's constitutional rights.  Upon the identities being ascertained via the discovery process, Plaintiff will timely move to amend Plaintiff's Verified Complaint to add these additional parties as defendants and will also add a count of common law civil conspiracy.

hall or conference room that would have been rented by Plaintiff.  (Dockt. # 1 – Plaintiff's Verified Complaint,  ¶¶  19).    This  is  a  textbook  case  of  a  heckler's  veto—which  is  flagrantly unconstitutional.  See *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc).

In *Bible Believers*, the Sixth Circuit noted that "officers have a duty to protect speakers * * * from the reactions of hostile audiences."  *Bible Believers*, 805 F.3d at 236-237 (citing *Glasson v. City of Louisville*, 518 F.2d 899, 906 (6th Cir. 1975) ("A police officer has the duty not to ratify and effectuate a heckler's veto nor may he join a moiling mob intent on suppressing ideas." Instead, he must take reasonable action to protect from violence persons exercising their constitutional rights.")).  Said the Sixth Circuit, "If the officers allow a hostile audience to silence a speaker, the officers themselves effectively silence a speaker and effectuate a 'hecker's veto'; the First Amendment 'simply does not countenance this scenario.'"  *Bible Believers*, 805 F.3d at 237 (citing *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992); *Boos v Barry*, 485 U.S. 312, 320-321 (1998); *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973) ("[S]tate officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights.")).

The Sixth Circuit made it clear that it is "a police officer's * * * duty * * * to enforce laws already enacted and to make arrests * * * for conduct already made criminal."  *Bible Believers*, 805 F.3d at 251 (quoting *Gregory v. City of Chicago*, 394 U.S. 111, 120 (1969)).  "An officer [cannot] sit idly on the sidelines—watching as the crowd imposes, through violence, a tyrannical majoritarian rule[.]"  *Bible Believers*, 805 F.3d at 253.

Being that Spencer's speech is not intentionally directed to inciting or producing imminent lawless action and is not likely to incite or produce such action, Defendants cannot punish Spencer's speech by prohibiting Plaintiff from hosting Spencer in a rented room on MSU's campus

solely because some people of a far-left political persuasion find it to be inflammatory. See *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

Content-based restrictions—those that target speech based on its content—"are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). A blanket ban on Spencer being able to give a speech on MSU's campus is not narrowly tailored, and shutting down Spencer's prospective speaking event so that left-wing agitators are not triggered to incite violence is not a compelling state interest.

Plaintiff will most certainly prevail with Plaintiff's claims against Defendants—and it will likely eventually be done via a motion for summary judgment. See Fed. R. Civ. P. 56.

## B. PLAINTIFF WOULD SUFFER IRREPARABLE INJURY IF THE COURT DOES NOT GRANT THE REQUESTED PRELIMINARY INJUNCTION

Plaintiff would suffer irreparable injury if the Court does not grant Plaintiff the requested preliminary injunction.

"[A] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by money damages." *Overstreet*, 305 F.3d at 578; see also *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate.").

In *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the U.S. Supreme Court noted that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

In the instant case, Plaintiff is being denied by Defendants the opportunity to rent a conference room or lecture hall on the campus of MSU at which Spencer would lecture and answer

questions from the audience about his Alt-Right worldview.  Defendants' conduct of prohibiting Plaintiff from renting the room for said purpose unquestionably constitutes irreparable injury.

## C. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO DEFENDANTS OR THIRD-PARTIES TO THE INSTANT CIVIL ACTION

The issuance of the requested preliminary injunction would not cause substantial harm to Defendants or third-parties to the instant civil action.

Defendants, as governmental actors who are acting under the color of state law, are obligated to comply with the freedoms guaranteed by the United States Constitution.  Defendants suffer no harm—much less substantial harm—for being required to do their jobs.

Third-parties to the instant civil action, likewise, would not suffer harm—much less substantial harm—should the Court award Plaintiff the requested preliminary injunction.  If third-parties are uninterested in what Spencer thinks, then said third-parties need not attend Plaintiff's planned event.  It is inconceivable that a third-party would suffer a cognizable injury solely because Spencer speaks.

## D. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

The issuance of the requested preliminary injunction is in the public interest.  See *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest.").

The First Amendment to the United States Constitution states in pertinent part, "Congress shall make no law * * * abridging the freedom of speech * * * or the right of the people peaceably to assemble[.]"  It is in the public interest for governmental actors—such as Defendants—to comply with and not subvert this right which is fundamental to the traditions, institutions, and ideals of the United States of America.

15

By awarding Plaintiff the requested preliminary injunction which would require Defendants to permit Plaintiff to rent a room and for the MSU Police Department to maintain law and order, Spencer and his supporters would be able to share their political ideas with anyone who is interested in them, and people who are interested in Spencer's ideas would be able to hear him speak and challenge him during any question and answer session following his lecture.

Although President Simon clearly now has no respect for the First Amendment to the United States Constitution and the freedoms that it guarantees—as evidenced by the instant controversy—, the President Simon of yesteryear respected the fundamental right of free speech and a statement she released on October 25, 2007, best articulates the public policy interest associated with avoiding political censorship in academia:

> In recent weeks, there have been incidents on campus that once again compel us to look at the issues of free speech and how we as a campus community engage with one another in ways that respect the views of multiple groups and individuals. I've written about this topic often because it is at the heart of academic freedom and the notion that a university should be an open marketplace for the free exchange of ideas. I'm writing again today because recent acts on campus challenge these ideals and seek to exert the rights of free speech for some while prohibiting the rights of others.
>
> There are individuals who speak at campus events whose rhetoric and ideas I find reprehensible, and although I may not appreciate their positions, I do respect their right to share their views. The more extreme the view, in either direction, the more it tests us. And, it is certainly true that it is harder to avoid behaviors that compromise the marketplace of ideas when we are deeply offended. We must, however, collectively deny inappropriate behavior in all forms in order to protect the rights we all hold dear.
>
> Although we may disagree with one another's positions, we must respect the rights of individuals to express their positions without fear of intimidation and/or physical harm. Michigan State University's philosophy on campus dissent is a belief that the rights guaranteed in the First and Fourteenth amendments of the Constitution must be protected. Acts intended to prohibit the free speech rights of any individual or group, such as destroying informational materials, preventing access to an event, or shouting down a speaker do not support this philosophy and undermine our efforts to encourage robust intellectual discourse.

There are constructive ways, however, to express disagreement with the views or ideas of a particular group or individual that respect the rights of everyone. Sponsoring an event that highlights an opposing view or peacefully protesting at an event by simply and silently walking out are two excellent examples of recent campus "protests."

The university has worked for decades to establish a community consensus on the scope of intellectually productive and constitutionally protected dissent, and to distinguish it from impermissible disruption. Destruction and intimidating behavior not only threaten the safety of our community but inhibits opportunities for productive civil engagement.

Lou Anna K. Simon, "Free Exchange of Ideas."  Office of the President.  25 October 2007.

<http://president.msu.edu/communications/from-the-presidents-desk/2007/free-exchange-of-

ideas.html>.  Accessed 9 September 2017.

The President Simon of yesteryear was correct:  "the rights we all hold dear" "must be protected," the "university should be an open marketplace for the free exchange of ideas," and "the First and Fourteenth amendments of the Constitution must be protected."

Freedom is in the public interest.

## VI.  EXHIBIT LIST

EXHIBIT A – *Padgett v. Auburn University* Preliminary Injunction Opinion

## VII.  CONCLUSION

For the reasons set forth herein the Court should award Plaintiff a preliminary injunction wherein Defendants are ordered to permit Plaintiff to rent a conference room or lecture hall on the campus of MSU to host Spencer as a speaker without Plaintiff being required to pay for police protection, posting bond, or providing insurance for the event, and which also requires Defendants to maintain law and order via the use of the MSU Police Department so as to permit the attendees of the event to peacefully assemble and speak.

Plaintiff has a right to host Spencer as a speaker at MSU pursuant to the First and Fourteenth Amendments to the United States Constitution.

Defendants must maintain order with the MSU Police Department to protect Spencer and Spencer's supporters from a left-wing mob at any event on MSU's campus pursuant to *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc).

Defendants cannot charge Plaintiff bond, insurance, or for police protection pursuant to *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992).  A price-tag cannot be attached to the exercise of the freedom of speech, and it would constitute unconstitutional content discrimination via a heckler's veto if Defendants charged Plaintiff to protect Spencer or Spencer's supporters from their detractors.

Defendants closed the marketplace of ideas at Michigan State University.  It is now incumbent for the United States District Court for the Western District of Michigan to open it back up via the issuance of the requested preliminary injunction.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle Bristow_____
Kyle Bristow, Esq. (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(P):  (248) 838-9934
(E):  BristowLaw@gmail.com
*Attorney for Cameron Padgett*

Dated:  September 10, 2017

## VIII.  CERTIFICATE OF SERVICE

I, Kyle Bristow, affirm that I am an attorney of record for a party to the above-caption civil action, and on September 10, 2017, I served a true and accurate copy of this document upon all attorneys of record who have registered to receive service of process via the Court's Electronic Filing System by submitting said document to said system.

/s/ Kyle Bristow_____
Kyle Bristow, Esq. (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(P):  (248) 838-9934
(E):  BristowLaw@gmail.com
*Attorney for Cameron Padgett*

Dated:  September 10, 2017